**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHRIS McCANN | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. RWT-13-3693 |
| | * | |
| BOBBY SHEARIN, et al. | * | |
| | * | |
| Defendants | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Pending in the above-captioned civil rights action is Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment (ECF No. No. 43).  Also pending are Plaintiff's Motions for Discovery (ECF No. 28), to Amend the Complaint (ECF No. 37), for Injunction and Protective Order (ECF No. 38), and for Extension of Time (ECF No. 48).[1]  The undersigned finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014).  For the reasons set forth below, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted and Plaintiff's pending motions shall be denied.

### Allegations in the Complaint

Plaintiff Chris McCann ("McCann") is a prisoner confined to the custody of the Maryland Division of Correction ("DOC") in North Branch Correctional Institution ("NBCI").  The instant Complaint concerns conditions of confinement at NBCI.  McCann alleges in the original Complaint that NBCI is overcrowded, causing the prison to be unsafe and depriving inmates of access to healthcare, legal material, and recreation or exercise.  ECF No. 1 at 3.

---

[1] Also pending is a Motion to Move for Perjury Charges and Submission of False Documentation Charges. ECF No. 51.  The Court adjudicates cases, it does not charge crimes.  McCann needs to direct this request to the appropriate prosecuting authority.  This motion will be denied.

McCann states that NBCI was designed as a super-max, single-cell facility, but due to the need for bed space the DOC has turned NBCI into a "population prison" without improving the "area provided." *Id*. at 4.  He claims the population at NBCI is a mix of "max 1 and max 2 and death row," and asserts that NBCI has been characterized by the Secretary of the DOC as a maximum security prison reserved for the "worst of the worst." *Id*.  McCann cites to DOC directives ("DCD") which provide a mission statement defining NBCI as a prison reserved for inmates who "pose a high risk of violence and cannot be housed in any other institution." *Id*. at 4.

At the time McCann filed his Complaint, prisoners at NBCI were locked into cells with their cellmates 23 hours a day with one hour of out-of-cell recreation, which was later changed to one hour per week. *Id*.  McCann observes that even spouses are not required to spend that much time together in close quarters, yet still fight; requiring "the worst of the worst" to spend that much time together is a recipe for violence. *Id*.  He states he has been diagnosed with anti-social personality disorder and has "been forced to hurt people." *Id*.  McCann claims the conditions under which he is confined are detrimental to his rehabilitation. *Id*.  He further claims that when "somebody's cellmate wants to fight over anything at all, you have no choice but to fight." *Id*. at 5.  Since the cell doors are "solid steel," McCann claims that Correctional Officers cannot hear cries for help unless they are near the door. *Id*.  McCann claims that, "half [of the correctional officers] aren't even on the tier, much less near the cell." *Id*.  McCann alleges that double-celling under these conditions also increases the chances of sexual assault which led to murders of inmates by their cellmates because there is a delay in help arriving for the victim. *Id*.

McCann states that for most of the year in 2013, NBCI was locked down and correctional officers were protesting because their safety was endangered. *Id.* at 5.  He claims that officers

are unable to respond because they are fearful and there is no room inside the cells for them to step in to break up a fight. *Id*. at 5-6. Rather, officers order the inmates to stop fighting and wait for compliance, which McCann states rarely happens. *Id*. at 6. When the inmates fail to comply, officers resort to spraying mace inside the cell "until they stop which takes a while." *Id*. McCann points out that officers are provided protective gear to wear, but are still fearful for their safety, while inmates are not provided such gear. *Id*. Thus, inmates are left feeling unsafe in cells designed for one person, shared with another. *Id*. McCann alleges the use of a single cell to double cell inmates violates standards in the Federal Bureau of Prisons, Maryland Commission on Correctional Standards, American Correctional Association, and "several psychological institutions." *Id*.

In addition to the lack of safety from inmate-on-inmate violence, McCann asserts that overcrowding also forces idleness on the population. *Id*. He states that access to educational, vocational, and other "constructive outlets" are severely limited or non-existent. *Id*. McCann claims that DOC policies attempt to prevent idleness because idleness promotes violence in the prison population. *Id*.

McCann claims the overcrowding also impacts on access to medical care. He states the large number of inmates, coupled with the limited amount of time officers have to do sick call, results in doctors and nurses being rushed through exams. *Id*. McCann claims that doctors are forced to forego examinations and "rush" diagnoses, leading to inaccurate evaluations of medical conditions. *Id*. He states this results in inmates not getting proper treatment. McCann claims this resulted in his permanent disfigurement and detachment of "stomach muscles and ligaments" and "partial organ failure" because he could not receive "actual treatment." *Id*.

McCann alleges that dental care is also adversely effected by the overcrowded conditions. He states that dentists must "forego caution and delicacy" in order to meet the high demand for services. He claims "teeth are messed up" and fillings fall out constantly. Dentists do not have time to properly determine if a tooth needs to be pulled, according to McCann, so teeth are pulled without that determination. *Id.* at 7.

McCann asserts it is not possible to exercise in the cells at NBCI because there is no room when two are assigned to a cell designed for one. He claims it is not possible to even walk back and forth in the cell, exposing inmates to a higher risk of heart problems, cardiovascular disease, and deep vein thrombosis, among other medical conditions. McCann further states that out-of-cell recreation time is inadequate because the prison is overcrowded. In addition, McCann states hygiene is limited due to the fact that there are 100 inmates on each tier with only 8 showers on the tier for all to use. Thus, it is not possible to receive a shower on a regular basis. *Id.* at 7.

McCann claims that access to legal material at NBCI is non-existent and it negatively impacts on the ability to challenge the validity of criminal convictions in the state courts. He asserts that the limited resources available to the Maryland Public Defender's Office results in an increased need for inmates to challenge their convictions via self-represented pleadings. McCann claims that errors are frequently made in those pleadings because there is no access to case law. *Id.* at 7 – 8.

McCann admits inmates at NBCI receive three meals a day, but states that because staff are unable to control population, inmates are fed in their cells. Because there are two people in each cell, McCann claims there is nowhere to eat and inmates are forced to eat off of the floor or

the toilet.  McCann states that attempting to eat standing up while holding the tray often results in the food being spilled which causes conflict among cellmates.  *Id.* at 8.

McCann claims there is a "quota system" in place at NBCI to deal with rotation of the population.  He explains that NBCI has four buildings which house inmates.  One of those buildings is for "lock-up" or disciplinary segregation, which frequently has no bed space.  In order for another inmate to be locked-up, one has to be released.  He asserts any time someone is released from lock-up, officers have to issue a "bogus ticket" so someone else gets locked up and the bed space is taken.  He asserts this affects due process rights by extending inmates' sentences through loss of good conduct time and adversely impacts on opportunities for parole.  *Id.* at 8.

McCann claims that the quota system also impacts on the practice of assigning inmates to share cells as officers do not use a classification system to double-cell inmates.  Inmates who are mentally ill are placed into cells with those who are not; members of rival gangs are put into cells together; and racist inmates are assigned cells with minorities.  McCann claims this practice is being done in order to support the quota system by fomenting conflict which results in additional disciplinary charges.  *Id.*

McCann requests as relief reduction of the inmate population at NBCI; and an injunction prohibiting random double celling assignments; and an end to the "quota system."  In addition, he seeks an order forcing the DOC to process grievances and order the use of "freshly made buildings in Jessup to reduce population" while this case is pending.  McCann also seeks to have the State of Maryland waive any criminal prosecutions for assault or murder he has to commit in self-defense and to hold the "state liable for damages or death" caused to McCann.  *Id.* at 9.

This Court required McCann to supplement the original Complaint with a description of how the challenged conditions have caused personal injury to him.  ECF No. 5.  In the Amended

Complaint, McCann explains that the overcrowded conditions, along with the "longest lockdown" in Maryland, have caused anxiety, stress, fear, and tension.  ECF No. 11 at 5. McCann claims that he is five feet tall[2] and the bunks in the cell are five feet off the ground, but prison officials refused to put ladders or handrails on the bunks, causing him to fall, injuring his toe, in 2011.  *Id*.  Additionally, he claims he has developed chronic knee problems from jumping off the bunk. *Id*.

McCann alleges that due to the number of inmates, administrative remedy procedure requests ("ARP") that he has filed were never adequately addressed.  He claims ARPs do not get investigated "forcing coordinator to summarize complaint."  McCann asserts he is not articulate and his claims regarding mail, medical care, and retaliation are never adequately addressed, causing him to continue to suffer from all of the issues raised in the ARPs he has filed.  *Id*.

McCann claims the forced idleness caused by the overcrowded conditions has denied him his "state right to rehabilitation."  He further claims he is denied constructive outlets such as educational and vocational activities, leaving him "nothing [to do], but to brood with another in the cell." *Id*.

In terms of medical care, McCann alleges that in an incident occurring on May 5, 2012, he was taken to see a nurse after exposure to mace, but the nurse "could not flush [his] eyes of mace." *Id*. at 6.  The examination was abandoned and McCann was told he was not in need of any further attention.  Four days later, when a lieutenant was investigating the matter, McCann was again taken to see the nurse and diagnosed with a concussion and partial temporary blindness in his left eye.  An x-ray was ordered on his skull and wrist, but due to the nurse being female, issues with his "private parts" were left untreated or undiagnosed until six months later. McCann states he was eventually taken to see a urologist who prescribed antibiotics and advised

---

[2]   Records submitted by Defendants indicate McCann is five feet, six inches.

that McCann should return in 60 days.  McCann was never taken back to the urologist and states he has been left in pain from a permanent torn ligament and "tissue to penile region."  He claims he has permanent urination problems.  *Id.*

McCann adds that when he fell from his bunk and injured his toe it took three weeks for him to be seen.  He claims that in 2008 all medical braces were taken from inmates coming into NBCI pending approval for the braces.  He states it took a year to get a medical brace back and during that time he was forced to perform heavy lifting, re-injuring an inguinal hernia he had surgically repaired six months prior at another prison.  *Id.* at 6.

With regard to dental care, McCann claims that on January 10, 2010, a doctor ordered him to be seen by a dentist because half of his face was swollen from "tooth #11" which the dentist kept missing during previous visits.  McCann attempted to explain "for years" that he is young, does not have all of his adult teeth, and his teeth are moving, with only four of his teeth are making contact.  He states it took four years to get this diagnosis and in the interim he was grinding his teeth, causing them to break.  He claims if the dentist had time to examine him properly, all the repairs would not have been necessary.  McCann states that on April 30, 2012, tooth #21 was removed and was done on three visits,[3] causing him to suffer pain between visits.  On March 14, 2012, McCann states a filling fell out of one of his teeth and he had to wait until March 28, 2012 to be seen, leaving him in pain while he waited.  When he returned to the dentist, he states the dentist cracked his tooth because he was rushing.  *Id.* at 7.

McCann alleges the lack of space inside the cell for exercise and the lack of out-of-cell recreation affects him because he has heart and vascular problems which are exacerbated by the lack of exercise.  He states he has bed sores and muscle atrophy from laying around in his cell.

---

[3]  McCann's description of this process is unclear as he first says the tooth was removed on April 30, 2012, but then states part was removed on June 13, 2012 and part was removed on July 17, 2012.  ECF 11 at 7.

McCann further asserts that the day room has 16 seats with no additional room to move around. *Id.* at 7-8.

Regarding lack of access to legal materials, McCann asserts that in 2008 he lost an appeal for custody and visitation in the Court of Special Appeals.  On December 10, 2008, McCann states he had another "visitation hearing" and lost the case again because he had no access to legal material.  He further alleges that in March of 2009, the Court of Special Appeals affirmed his criminal conviction and he had no knowledge on how to file a petition for writ of certiorari in the Court of Appeals.  In 2010, McCann filed a federal habeas corpus in this Court seeking to toll the statute of limitation, but the case was dismissed as time-barred.  McCann states he was forced on February 15, 2014, to file a petition for post-conviction relief without the assistance of counsel because the public defender declined his case.  McCann attempted to "dismiss" the attorney assigned to represent him at the hearing, but was informed he would have to proceed without counsel if he did so.  He states he attempted to dismiss the attorney because the attorney refused to do anything for him.  *Id*. at 8- 9.

McCann claims that the prison grievance system "requires us to use case law" and he has been "shot down for not being able to give information" on ARPs.  He asserts this has prevented him from exhausting administrative remedies as required.  McCann adds that a civil case he filed in the Allegany County state court[4] was dismissed when he failed to provide "proof of service."  He claims if he had access to legal material he would have known about this requirement.  *Id.* at 9-10.

McCann claims that mail is often lost or misdirected because it is sent to the Western Correctional Institution ("WCI") mailroom.  He states he has had several court cases as well as several grievances dismissed because mail does not make it to the intended destination.  McCann

---

[4] McCann does not state which court he filed this case in, nor does he state its subject matter.

alleges that NBCI officers claim they can't do anything about the WCI mailroom losing mail because it is a different prison and some of the officers use this as an excuse to steal mail. Specifically, McCann states Civil Action RWT-12-1878 was dismissed by this Court because the amended petition was not received; three civil cases[5] were dismissed by an Allegany County court; and thirteen grievances could not be exhausted because his mail did not reach its destination. *Id.* at 10.

McCann asserts he has missed several classification yearly reviews or the reviews are done in absentia due to the number of inmates case managers are required to serve.  As a result, errors in his base file cannot be corrected, assistance with institutional problems is unavailable, and there is no opportunity plan for programming needs.  McCann asserts this negatively impacts on institutional adjustment as well as possibilities for release on parole.  McCann states that psychological treatment is largely unavailable and he has been constantly retaliated against since 2012 for "exposing corruption."   He further asserts he has only been seen once for psychological treatment since 2013.  *Id.* at 10.

### Defendants' Response

Defendants present, in support of their Motion to Dismiss or for Summary Judgment, NBCI Mission and Objectives (NBCI.ID.010.0015.1) (ECF No. 43, Ex. 1); Maryland Commission on Correctional Standards ("MCCS") Audit Results and Compliance Plan (ECF No. 43, Ex. 7); and Directives concerning the prevention, investigation, and elimination of sexual assault within the prison (ECF No. 43, Ex. 11 – 16).  Defendants maintain that NBCI does not suffer the dysfunction described by McCann and that he has failed to raise claims sufficient to support a constitutional violation.  They deny all allegations that medical and dental care is

---

[5]   McCann does not indicate the nature of these proceedings.

deficient; that mail is misdirected; or that McCann's personal safety has ever been placed in jeopardy.  ECF No. 43.

### Non-Dispositive Motions

In his Motion for Discovery (ECF No. 28), McCann asserts it is inappropriate to grant summary judgment in Defendants' favor without first allowing him to engage in discovery.  He seeks a list of forty (40) different documents and reports related to the overall conditions at NBCI such as the amount of money received for inmate welfare funds, the number of assaults that occur at NBCI, memoranda regarding the management of the mailroom, and square footage of various buildings within the NBCI complex.[6]  *Id.*  The motion is unsupported by an affidavit and provides no statement as to how any of the documents sought will assist McCann in responding to the dispositive motion.  *Id.*

There has been no Scheduling Order issued in this case setting forth deadlines for discovery.  *See* Local Rule 104.4 (D. Md. 2014).  Absent a Scheduling Order, the parties are not ordinarily entitled to engage in discovery.  An affidavit pursuant to Fed. R. Civ. Proc. 56(d) is appropriate where a motion for summary judgment has been filed and the nonmovant, McCann in this instance, "shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition."  Fed. R. Civ. Proc. 56(d).

The crux of Defendants' assertion in favor of summary judgment is that McCann has failed to show how he personally has been injured by the conditions as described.  The nature of the documents and reports requested appear to be an effort by McCann to show that others have suffered harm as a result of the conditions alleged. None of the requested material is specific to

---

[6] Much of the generalized information sought is presented in the exhibits attached to Defendants' Motion to Dismiss or for Summary Judgment.  ECF 43.

McCann.  In any event, McCann's motion is not properly supported by an affidavit and must be denied.

McCann seeks to add as a Defendant Frank Bishop because he is the current warden at NBCI.  ECF No. 37.  In the absence of any opposition by Defendants, the Motion shall be granted.

McCann also moves for an injunction and protective order.  ECF No. 38.  He claims that since filing the instant case he has been harassed and "constantly threatened" to drop the case. He asserts he was given a "false ticket" as a means of retaliation and seeks a protective order for the video from the security camera in order to establish the ticket was based on a falsified report. Additionally, he claims the tier cameras would capture the practice of placing inmates in his cell for the purpose of antagonizing him into fighting.  *Id.*

McCann does not state how the video would establish that the ticket is false, nor does he provide any other information regarding the infraction charged, the penalty imposed, or the disposition of the charges.  His generalized statement regarding an alleged practice of pitting one inmate against another through cell assignments is no more illuminating.  McCann provides no details regarding who was assigned to be his cellmate and why that assignment endangered his safety, nor does he state whether particular correctional officers knew or should have known of the danger presented. Given this lack of specificity, the Motion appears to be an attempt at a fishing expedition and shall be denied.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant
> is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (internal quotation marks omitted).

**Analysis**

<u>Conditions of Confinement</u>

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely "restrictive or even harsh…are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of [a] basic human need was *objectively* sufficiently

> serious, and that *subjectively* the officials acted with a sufficiently
> culpable state of mind.

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (alteration and emphasis in original) (internal

quotation marks omitted).   "These requirements spring from the text of the amendment itself;

absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,'

and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*,

535 F.3d 225, 238 (4th Cir. 2008).

To establish a sufficiently culpable state of mind, "the test is whether the guards know the

plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet

they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723

(4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002).   Conduct is not

actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established

pre-existing law.  *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury.   "[T]o withstand

summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must

produce evidence of a serious or significant physical or emotional injury resulting from the

challenged conditions."   *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).   "Only

extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment

claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634

(4th Cir. 2003).

The gravamen of McCann's claim regarding the conditions of confinement at NBCI

concerns the practice of double-celling maximum security inmates for 23 hours a day, and at

times 24 hours a day, for an extended period of time while the prison was on lock-down.

Defendants admit NBCI was on a prison-wide lockdown from August 5, 2013 through August of

13

2014, with gradual return to normal operations beginning in March of 2014.  ECF  No. 43, Ex. 2

at 1, ¶¶ 5 and 8 (Declaration of Frank Bishop, Jr.).  Defendants explain, and McCann does not

dispute, that the lockdown was instituted after "numerous assaults to both staff and inmates, by

inmates." *Id*. at ¶ 5.

In his Opposition Response, McCann asserts that Max II security prison inmates are

required to be housed in single cells under Md. Code Regs. § 12.02.08.01(B)(11).  ECF No. 47

at 3.  The provision McCann cites provides as follows:

> "Super maximum security" means the highest security level. A super
> maximum security institution provides secure housing within a secure
> perimeter. Features include single-celling, extremely limited institutional
> movement, constant observation, and limited inmate-to-staff and
> inmate-to-inmate contact to control the behavior of an inmate who has
> demonstrated an inability to be housed in an institution of lesser security.

*Id*.  While a requirement for single cell housing might be gleaned from the regulatory language,

that requirement, if it exists, is a state law and its violation alone does not necessarily mean the

Eighth Amendment has been abridged.  Indeed, the Supreme Court has squarely addressed the

issue of whether double-celling of prisoners constitutes cruel and unusual punishment, and has

held that it does not.  *See Rhodes*, 452 U.S. 337, 343-44.  Therefore, this claim fails.

### Access to Courts

Prisoners have a constitutionally protected right of access to the courts.  *See

Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims.  The tools it requires to be provided are those that the
> inmates need in order to attack their sentences, directly or collaterally, and in
> order to challenge the conditions of their confinement.  Impairment of any *other*
> litigating capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355.   "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.   Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 352-353.   "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

The claims related to McCann's access to courts claim include his claims regarding inadequate access to legal material and mishandling of the mail.   In his Opposition, McCann states with regard to legal materials that there has been an ongoing problem at NBCI since 2008 when he was charged with inciting a riot because he spoke out about inadequate resources to access for an upcoming custody and visitation hearing.   ECF No. 47 at 13.   He states the charges were ultimately reduced to disobeying a direct order and prison officials agreed to put in a satellite library in each unit, but despite that promise legal materials are still scarce and outdated. *Id*.

McCann explains he lost a "sentence review" because the only available copy of the Maryland Rules was a 1992 edition, and he did not know about a change in the rules that took place in 2006 requiring a "sentence review" to be filed within 5 years or it is forfeited. ECF No. 47 at 13.   McCann is serving a life sentence for first-degree attempted murder and

violation of a protective order after he was convicted of attacking Alison Kirby, the mother of his three children.[7]  *See McCann v. Shearin*, Civil Action RWT-10-486 (D. Md.) at ECF No. 7 (Memorandum Opinion).  McCann was sentenced in the Circuit Court for Baltimore County on December 8, 2006; and his conviction was affirmed on appeal by the Court of Special Appeals on March 17, 2009.  *Id.*, *see also id.* at ECF No. 5, Ex. 5 and 8.

McCann filed an application for review by a three-judge panel on December 20, 2006, and a decision to leave his sentence unchanged was issued on June 26, 2007.  *See State of Maryland v. McCann*, Crim. No. 03K06002333 (Balt. Co. Cir. Ct. 2006).  He also filed a Motion to Revise Sentence on December 27, 2006.  *Id.*  Assuming all of McCann's allegations regarding the outdated volume of the Maryland Rules are true, it is clear from the docket of his criminal case that neither motion was denied as untimely.  The claim fails as McCann has not established that the lack of legal materials had any significant impact on the motion to review his sentence.

McCann also asserts the habeas corpus petition he filed in this Court is an example of being denied access to the courts due to lack of legal resources.  ECF No. 47 at 13-14.  McCann claims he filed the petition here in an effort to toll the deadline and claims "if I had access to legal material I would of know (sic) it was already tolled and would not of (sic) wasted my time filing in Federal."  *Id.*  McCann's petition for writ of habeas corpus was filed with this Court on March 1, 2010, and raised claims identical to those raised in his direct appeal with the Court of Special Appeals.  *McCann v. Shearin*, Civil Action RWT-10-486 (D. Md. 2010).  The petition was dismissed on the grounds a procedural default had occurred when McCann failed to seek further review from the Maryland Court of Appeals and failed to establish cause for not filing for further review.  *Id.* at ECF No. 7.  To the extent McCann is claiming that he suffered injury

---

[7] Ms. Kirby suffered multiple stab wounds and lacerations to her head, face, neck, shoulder and arm, as well as a fractured skull.  *See McCann v. Shearin*, Civil Action RWT-10-486 at ECF 7 and ECF 5.

because he failed to petition for certiorari from the Maryland Court of Appeals, this claim fails because the public defender's office explained to McCann how to complete and file a petition. *McCann*, RWT-10-486, ECF No. 6 at 13.  To the extent that McCann is claiming he suffered an injury by filing an unnecessary petition with this Court, his claim fails because he has not lost a legal right, he has just made an unnecessary filing.  That is not a cognizable injury.

McCann disputes Defendants' assertion that NBCI has adequate mail services and policies.  ECF No. 47 at 17.  He states the declaration submitted by Defendants references "WCI/NBCI mailroom" establishing that NBCI does not have its own mailroom.  *Id*. citing ECF No. 43, Ex. 28, ¶ 4.   He claims as a result mail is lost and that the problem is well documented.  *Id*.  In fact, McCann provides a Motion to Remand filed by the Office of the Attorney General in the Circuit Court for Allegany County in a case seeking judicial review of an administrative agency decision.  ECF No. 47, Ex. 21.  In that motion counsel states, "[i]t is well-established that there have been long-standing issues with inmates' mail being sent and received, including legal mail from NBCI."  *Id*. at 3.  Defendants' assert that "[a]t no time" was McCann's "mail, legal or otherwise, withheld, delayed, or not processed, when said mailing was in compliance and consistent with approved policies and directives of the DPSCS."  ECF No. 43, Ex. 28 at ¶ 5.  To establish a constitutional claim there must be more than evidence of a general problem with mail delivery; McCann himself must have suffered an actual injury.

McCann alleges his effort to mail his petition for post-conviction relief was adversely affected as he mailed it out several times, it was never received, and he was then refused the opportunity to get stamps because of the lockdown.  ECF No. 47 at 18.  He claims this, in turn, affected his federal habeas petition as he could not claim "due diligence."  *Id*.  The informal grievance McCann filed regarding postage indicates he did not qualify for free postage because

he had had money in his account 30 days prior to his request.  *Id.* at Ex. 20, p. 6.  The grievance

is dated July 30, 2013.  *Id.*  McCann's Petition for Writ of Habeas Corpus was dismissed by this

Court on December 13, 2010.  *See* Civil Action RWT-10-486 at ECF Nos. 7 and 8.

Additionally, a petition for post-conviction relief was filed in McCann's criminal case in the

Baltimore County Circuit Court on August 20, 2013.  *See State of Maryland v. McCann*,

Crim. No. 03K06002333 (Balt. Co. Cir. Ct. 2006).[8]   In the "Motion for New Trial

(Post-Conviction)" McCann attaches as an exhibit to his Opposition Response, he alleges that he

was improperly denied a postponement of his post-conviction hearing which he sought in order

to obtain new counsel and the judge exhibited judicial bias.  ECF No. 47, Ex. 27 at 12-14.   The

motion was denied by marginal order on March 1, 2014; there is no notation indicating the

motion was untimely filed.  Additionally, there are no allegations raised in the motion that would

entitle McCann to the relief sought as Maryland's Post-Conviction Act[9] guarantees one hearing

only.   There is no actual injury established regarding review of McCann's criminal case.

McCann also claims that a civil action in this Court was dismissed because he was

ordered to supplement the complaint and his supplemental pleading was never received.

ECF No. 47 at 18, citing *McCann v. DOC Commissioner*, Civil Action RWT-12-1878 (D. Md.).

A review of that case, however, establishes that McCann filed two supplemental pleadings

within the time limit set by this Court.  *See id*. at ECF Nos. 3 and 4.  The complaint was

dismissed without prejudice because McCann did not provide the dates of the incident described,

nor did he provide the names of all of the intended Defendants.  *Id*. at ECF No. 5.  Additionally,

McCann added claims regarding retaliation, violation of prison regulations, and conspiracies by

---

[8] *See* http://casesearch.courts.state.md.us/inquiry

[9] *See* Md. Crim. Proc., Code Ann. §7-108 (entitlement to counsel and a hearing); *see also* Md. Crim. Proc.,
Code Ann. §7-104 (requiring a finding that reopening post-conviction proceedings is "in the interests of justice.").

correctional staff to engage in a relentless campaign of retaliation. *Id*. The complaint as amended was dismissed pursuant to Fed. R. Civ. Proc. 8, for failing to state with enough specificity the nature of the allegations raised.[10] *Id*. The asserted issue with mail or legal resources played no role in the dismissal of the complaint; thus, the dismissal of Civil Action RWT-12-1878 does not establish the existence of an actual injury for purposes of a constitutional claim.

McCann also states two applications for judicial review of decisions by the Inmate Grievance Office were lost due to mail issues at NBCI. ECF No. 47 at 18. McCann states one pertained to a disciplinary proceeding resulting from an "incident" that occurred on May 5, 2012, and the second concerned a correctional officer McCann "exposed [for] trying to label [him] as a snitch." *Id*. McCann does not provide enough information about either of these two claims to determine if they were meritorious; thus, he has failed to establish an actual injury with regard to the alleged loss of the opportunity to seek judicial review.

Finally, McCann claims that two custody and visitation cases and one civil case in Allegany County were lost in the mail. ECF No. 11 at 8. These cases, being completely unrelated to attacking McCann's sentence or challenging conditions of confinement, do not implicate access to the courts. *Lewis v. Casey*, 518 U. S. at 355.

---

[10]   This Court noted that:

> Absent from Plaintiff's Complaint and supplemental filings are such details as who was involved and when the events occurred. His generalized claims that he is the subject of retaliation and his disagreement with decisions made regarding the management of the prison are simply not enough to state a viable claim or to require the state to expend resources defending against the allegations.

*McCann v. DOC Commissioner*, Civil Action RWT-12-1878 (D. Md.) at ECF 5, pp. 2 – 3.

In light of the fact that McCann has failed to establish an actual injury resulting from the alleged lack of resources and delays in the mail, Defendants are entitled to summary judgment in their favor with respect to his access to courts claims.

### Protection from Violence

In order to prevail on an Eighth Amendment claim of failure to protect from violence, McCann must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (internal quotation marks omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

McCann claims that correctional officers place inmates together in a cell who the officers know would not get along. He states this is done for the officers' entertainment. ECF No. 47. McCann further claims that during the lockdown he "was not getting along with [his] cell buddy" and that he asked officers to move them to different cells. *Id*. at 21. He alleges, "I had to fight for 25 minutes until I was able to put cell buddy to sleep." *Id*. McCann admits he tied his cell mate up for two hours, "until he promised it was over." *Id*. He adds that "at any time I could be the one tied up with a person of ulterior motives." *Id*.

McCann's claim offers no evidence of actual harm.   The Eighth Amendment's prohibition of cruel and unusual punishment does not encompass an inmate's right to manufacture a claim by assaulting another inmate.   To the extent the officers responsible for assigning a cellmate to McCann knew or should have known McCann would attack him, the cause of action that arises would be in favor of the cellmate, not McCann.   His claim that it could have happened to him is speculative in nature especially in this instance where McCann provides no explanation as to why or how an imminent threat of harm would have been known by the officers responsible.   Defendants are entitled to summary judgment on this claim.

<u>Rehabilitation and Programs</u>

Because it is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison versus another, absent a showing of significant hardship, the portion of McCann's Complaint regarding these allegations must be dismissed.   "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

McCann's claims regarding programming and jobs are essentially policy arguments that, if adopted, would no doubt provide for a more beneficently run prison.   In terms of a constitutional claim, however, the absence of an opportunity to earn funds to finance purchases of writing supplies or opportunities to learn skills that might be beneficial should McCann be

released on parole,[11] are not cognizable constitutional claims.  Moreover, it is not the role of the federal courts to determine how a state should operate its prisons absent constitutionally prohibited conditions.  Defendants are entitled to summary judgment on the claim regarding programming and rehabilitation.

Retaliation

In order to prevail on a claim of retaliation, McCann "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

---

[11]To the extent McCann's claim touches on his inability to curry favor with the Parole Commission through participation in rehabilitative programs, the Constitution itself does not create a protected liberty interest in the expectation of parole. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7 (1979); *see also Jago v. Van Curen*, 454 U. S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest).  "It is therefore axiomatic that because . . . prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.1997).

In an Amended Complaint, McCann asserts he has been targeted for retaliatory actions for speaking out about library access.  ECF No. 21.  He claims that in 2012 he was "brutally beaten for exposing corrupt officers."  *Id*. at 2-3.  The asserted retaliation included a refusal to feed McCann following the incident and setting him up for a "speaker ticket" which he claims disappeared after his family got involved.  *Id*.  Defendants have provided serious incident reports regarding the 2012 incident which arose when McCann punched a correctional officer in the head after he was ordered to submit to handcuffing so that he could be removed from the prison kitchen area.  ECF No. 43, Ex. 17.  McCann was maced and "taken down" to the floor in response to his assault on the officer.  All written reports indicate that McCann continued to struggle against the officers as they attempted to restrain him. The accounts of the incident portray McCann's conduct as an unprovoked assault on an officer.

McCann does not dispute that he assaulted an officer, but alleges he felt his conduct was self-defense due to the "long history" of correctional officers assaulting inmates.  ECF No. 47 at 23.  He asserts the entire incident arose when Officer Crowe called him and another inmate to the back of the kitchen because Lt. Haggert "was asking questions" about her activities.  *Id*. at 23.  McCann claims Crowe was becoming worried someone was reporting her "illegal activities" and she threatened to have other officers beat them up.  *Id*.  McCann claims after the conversation he was worried and explained to Crowe no one was talking, but when he walked away from her she started "screaming" across the kitchen for the first officer he saw, Officer Jeff Coats. *Id*.  As McCann was talking to Coats, McCann claims Crowe got on her radio and called for back-up. *Id*.

McCann asserts he was surrounded by 15 officers and he took a swing at the officer closest to him.  *Id*.  He does not dispute that "it would appear [he] was still resisting" as there

were so many people involved and they were "twisting" him in different directions. *Id*. He disputes that he declined treatment for exposure to chemical agents and states it would not make sense for him to do so as "that stuff is painful." *Id*. McCann states during the struggle on the ground he felt a pop in his groin that was followed by excruciating pain and he stopped resisting. *Id*. Despite the cessation of resistance, McCann claims that on the way to the medical unit he was still being assaulted. *Id*. McCann's entire story was never reported for purposes of investigating his claims.

The vague assertions of retaliation dating back to 2008 and the disappearing disciplinary ticket claimed by McCann are insufficient to establish a viable claim of retaliation. To the extent force was used against McCann in the 2012 incident, it is clear that force was a justified response to his unprovoked violence and refusal to obey lawful orders. Where, as here, adverse actions are taken in response to conduct that is a direct threat to the security of a prison, improper retaliatory motives cannot be imputed to the officials' actions. The claim fails and Defendants are entitled to summary judgment in their favor.

<u>Medical and Dental Care</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the

prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires subjective recklessness in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000).

McCann's claim is that due to overcrowded conditions medical and dental exams are rushed and inaccurate, causing missed diagnoses. Whether his assertion is true or false, McCann has failed to state a claim against the named Defendants for the alleged insufficiencies. "Section 1983 liability on the part of . . . supervisory defendants requires a showing that:  (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or

(3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted).   There is no evidence that Defendants interfered with required care for McCann and even if the dental and medical care providers who allegedly missed issues requiring attention were named as Defendants, the claim would still fail.   While McCann, like other prisoners, is entitled to treatment for serious medical conditions, that right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977).   To the extent some of McCann's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference."   *Estelle*, 429 U.S. at 105.   Thus, Defendants are entitled to summary judgment in their favor on McCann's claims his medical and dental care was compromised due to overcrowding.

## Conclusion

While some of the concerns expressed in McCann's Complaint concerning the ill-effects of overcrowding coupled with an extended lockdown are well taken, he nevertheless must provide evidence that he has suffered significant injury as a result of those conditions.   McCann may not assert generalized claims regarding conditions as they affect the inmate population as a whole because he is not an attorney and, therefore, does not have the authority to assert claims

on behalf of others.  Defendants are entitled to summary judgment on all of the claims asserted.

A separate Order follows.


June 11, 2015                                    /s/
Date                                    ROGER W. TITUS
                                        UNITED STATES DISTRICT JUDGE